McHarry v. Irvin's Ex'r.

---

CASE 46—PETITION EQUITY—MARCH 8.

## McHarry v. Irvin's Ex'r.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. CONTRACTS BETWEEN PRINCIPAL AND AGENT should be jealously scrutinized, and slight circumstances of inequality, surprise and hardship may be sufficient to vacate them, even sometimes without proof of fraud.

McHarry v. Irvin's Ex'r.

2. FRAUD.—The relation of parent and child is always to be considered in determining, as a question of fact, whether a gift or bounty from one to the other has been unfairly obtained, as the same implication or presumption of undue influence or fraud does not arise in such case as when the parties are strangers, and the relation of principal and agent exists.   But there is no rule which will enable a son-in-law, who is the agent of his mother-in-law, to profit by a gift or purchase obtained from her by undue influence or fraud, if that fact be established by proof. ·

3. INADEQUACY OF CONSIDERATION is not, of itself, generally sufficient to avoid an executed conveyance, though it should always induce close scrutiny of the circumstances attending the transaction.

4. WHERE A FAMILY AGREEMENT OR COMPROMISE IS ENTERED INTO in ignorance by one party of material facts which it is the duty of the other side to disclose, it will be set aside at the instance of the party who entered into it in ignorance of the facts.

5. CASE.—Conveyances from a widow to her son-in-law, who, as her agent, had charge of the entire estate of her deceased husband, and in whom she had unbounded confidence, are set aside for fraud, the grantor being ignorant of the nature of her title, and the deeds, which contain false recitals, being procured by the grantee, for an inadequate consideration, as part of a long cherished plan to obtain possession of the entire estate of his father-in-law; and while the court does not understand this to be a family settlement in the sense of a compromise of doubtful or disputed claims, but a sale to the son-in-law, yet the court is of opinion that, even if it be regarded as such a settlement, the circumstances referred to make it a case of at least constructive fraud.

6. ONE MAY TESTIFY FOR HIMSELF CONCERNING A TRANSACTION WITH A DECEDENT where a representative of the decedent or one interested in his estate has testified in reference thereto.

7. THE STATUTE OF LIMITATIONS has no application to an action by a principal to recover of his agent property intrusted to him, the agency never having been abandoned by the agent or revoked by the principal.

GOODLOE & ROBERTS FOR APPELLANT.

I. The deed of trust of December 16, 1882, and the instrument of May 12, 1880, should be set aside for the following among many other reasons:

1. Because Irvin occupied confidential business relations with the plaintiff, and had no right to acquire *all of her estate* without adequate consideration and the utmost fair dealing; and the burden of establishing such facts is upon him, and his representatives have wholly failed to remove such burden.

While in cases of *actual* fraud the burden of proof is on the party complaining, a contrary rule prevails when the case to be made out is one of constructive fraud implied from the relations of the parties and the facts and circumstances attending the transaction. In such a case the burden of proof is on the party against whom complaint is made. (Bigelow on Frauds, 492, sec. 10; Narcissa's Ex'rs v. Wathen, 2 B. M., 241.)

Contracts between principal and agent are within this rule, and will be jealously scrutinized. (1 Perry on Trusts, sec. 206; McDaniel v. Wright, 7 J. J. M., 476; Gore v. Summersand, 5 Mon., 208.)

Where the consideration is grossly inadequate, as in this case, the trustee or agent cannot retain the benefits of his contract, no matter how honest his motive. (Michard v. Girod, 4 How., 556; Coffee v. Ruffin, 4 Cold., 514; Story's Equity Juris., vol. 1, sec. 315; McCurts v. Bee, 1 McCord, 255; Pugh's Heirs v. Bell's Heirs, 1 J. J. M., 406; Richardson v. Spencer, 18 B. M., 370.)

Where the inadequacy of consideration is gross and manifest, the court will infer fraud or imposition. (Hill on Trustees, side page 152.)

It would be no answer for Irvin, were he alive, to say he had so kept his accounts as it was impossible for him to make an accurate and true account, and the same rule will apply to his representatives. It is the duty of an agent to keep regular accounts, and this duty is strictly enforced in courts of equity. (Story on Agency, secs. 203, 204, 333.)

2. Because the deed of December 16, 1882, was made by the plaintiff under mistake as to the extent and value of her property. (See note to Stapilton v. Stapilton, Leading Cases in Equity, White and Tudor, 1717.)

3. Because the deed of trust was prepared by the attorney of Irvin, and the plaintiff had not an independent legal adviser, and the instrument was not left with her for consideration; and Irvin and his attorney, having undertaken to advise her, should have given her full advice as to the effect of the deed, and they failed to give her such advice.

Where there is proof of concealment the court will interpose; and where the parties to the transaction stand in a fiduciary relation, as where they are members of the same family, the obligation to disclose material facts becomes more imperative. (Hill on Trustees, side page 162; *Idem*, p. 204, sec. 148.)

And where such a relation of trust and confidence exists, it is necessary to impute knowledge which the party may not actually have. (Hugnenin v. Bosley, 14 Vesey, 273; White and Tudor, p. 1173; Bigelow on Fraud, p. 225; Hill on Trustees, side page 162.) It was therefore Irvin's duty to know the title of the Indiana lands when suffering the deed of trust to be made.

McHarry v. Irvin's Ex'r.

Even if Mrs. McHarry had a legal adviser in Col. Brown, he obtained valuable rights out of the property concerning which his professional services were rendered, and the rule of public policy which requires that the interest of an attorney shall not be brought in contact with the interest of his client, works a forfeiture of the contract growing out of the relation. (Kerr on Fraud and Mistake, 163.)

4. The evidence shows that Irvin had absolute dominion over the plaintiff, and exercised it to his advantage in getting the deed from her. (Hill on Trustees, side page 162; Beard v. Campbell, 2 Marshall, 127.)

5. Because the papers of the twelfth of May, 1880, and the sixteenth of December, 1882, state there were settlements when the evidence establishes there were never any settlements; the deed of trust recites that a *full, complete and final* settlement has been had and made between them *at the request* of the second party.

6. Because the deed of trust shows that a balance of fifty thousand dollars was found upon settlement, when no settlement was had and no balance found, and the proof shows that Irvin owed the plaintiff greatly in excess of fifty thousand dollars.

7. Because the deed of trust of December 16, 1882, shows upon its face that the plaintiff was misled and mistook her rights.

II. This case is not one that comes within the rule governing family arrangements or compromise.

But even if the transaction of the sixteenth of December, 1882, should be treated as a family arrangement or transaction, still there are many elements in this case for setting the deed aside. Because even such arrangements cannot be sustained, if by design or even by accident there has not been a full disclosure of all material circumstances in the knowledge of one of the parties, as it is immaterial whether information be asked by the other parties or not. (Leading Cases in Equity, by White and Tudor, vol. 2, part II, page 1691; Gordon v. Gordon, 3 Swanst., 400.)

Such a transaction is void viewed as a family arrangement, because unreasonable. (Stewart v. Stewart, 7 J. J. Mar., 187.)

The pretense of a family arrangement tends to excite instead of allaying suspicions of fraud. (Bridgman v. Green, 2 Vesey, 629.)

The deed of trust concedes a liability by Irvin to Mrs. McHarry. Therefore, it was merely a question as to amount of liability, and in all such cases courts of equity relieve against compromises even in the strictest family settlements. (Lawton v. Campion, 18 Beavan, 87.)

In cases of family settlements it is not enough to show that the settler read the deed, or that it was read to him, or that he understood it as well as any unprofessional man could be supposed to do; but it must be established that it was so explained to him that he might understand it, especially if any of the usual clauses are omitted, or any

McHarry v. Irvin's Ex'r.

unusual clauses are inserted. (White and Tudor's Leading Cases in Equity, vol. 2, part II, p. 1252, and authorities cited.)

III. Irvin should be charged with interest. An agent may be and ought to be charged with interest. (Taylor v. Knox, 5 Dana, 466.)

IV. The plaintiff's testimony was competent. The agreement of May 12, 1880, destroys itself as a receipt and release to Irvin, and there remains but that part of it which attempts to transfer Mrs. McHarry's claim against Irvin, to Irvin's wife. So far as this transfer is concerned, the plaintiff is not asserting any claim against a dead person's estate. If the transfer to Mrs. Irvin is defeated, still plaintiff must make out her claim against the estate. (Mix v. Marder's Ex'r, 79 Ky., 132.)

As to all other matters, the agents of Irvin as to those matters testified, or could have testified, which makes the plaintiff's testimony with reference thereto competent. (Civil Code, sec. 606, subsec. 2.)

V. The statute of limitation is not a bar to the action. The agency of Irvin was a subsisting one, and did not cease until December 16, 1882, and until then the statute did not begin to run. (Berdick v. Gaurick Law Reports, Chancery Appeal Cases, p. 333; Blount v. Robeson, Jones' Equity, vol. 3; Allen's Adm'r v. Woolley, 1 Green's Ch'y Rep., 209; 1 Ired. Eq., 303; Hopkins v. Hopkins, Strobhart's Eq. (S. C.), 213.) The cases of Railroad Co. v. Bridges, 7 B. M., 556, and Lexington Ins. Co. v. Page, 17 B. M., 327, are not adverse to the principles announced in the foregoing authorities.

VI. A court of equity will never suffer the plea of estoppel to avail a party where his claim or defense is based on a fraud or other wrongful act. Nor can a fraud be confirmed by the party defrauded so as to work out an estoppel.

Nor can there be any valid confirmation unless the confirmant is possessed of all the facts connected with the transaction. (Owings v. Hull, 9 Peters, 629.)

VII. Cases commented on: Allison v. Moore, MS. Op.; Milliken v. Milliken, 24 Texas, 445; Cowen v. Cornell, 75 N. Y.; Barton v. Wells, 5 Wharton, 227; Light v. Light, 21 Penn., 411; Talbott v. Hooser, 12 Bush, 413.

EDWARD J. McDERMOTT on same side.

I. The deed of trust executed December 16, 1882, by appellant and Irvin, her son-in-law, should be set aside because it was the result of fraud and undue influence on the part of Irvin, and of mistake and ignorance on the part of appellant.

The history of Irvin's connection with the McHarry estate, and all the transactions between him and appellant, are detailed for the purpose of showing his fraudulent motives and the influence he exerted over the appellant.

McHarry v. Irvin's Ex'r.

II. Whatever may be the facts as to actual fraud or mistake, the deed of trust must be set aside. A confidential relation subsisted between appellant and Irvin, and, therefore, the burden of proof rests upon the appellees, and they have failed to show by proof such open, fair, well-understood dealing as the rules of equity require. (Huguenin v. Basely, White and Tudor's L. C. Eq., vol. 2, p. 2.)

1. Irvin was Mrs. McHarry's agent; and a contract between an agent and his principal will be closely scrutinized, and if there is any fraud, concealment, unfairness or mistake, will be set aside. (Hill on Trustees, side pages 162, 173, 265 and 582; Selsey v. Rhoades, 2 S. & S., 49; Brock v. Barnes, 40 Barb., 527; Sears v. Shafer, 2 Selden, 272.)

2. An agent in dealing with his principal must make a full and frank disclosure of every thing affecting the property. (Taylor v. Knox, 1 Dana, 391; Fox v. Macreth, White and Tudor's L. C. Eq., vol. 1, p. 1; McDaniel v. Wright, 7 J. J. Mar., 475; Rhodes v. Bate, 1 Ch. App. Cases, 252; Lyme v. Beall, 1 Dana, 421; Narcissa's Ex'rs v. Wathen, 2 B. M., 241; Richardson v. Spencer, 18 B. M., 450.) And the principal must have separate, independent and disinterested advice. (Grosvenor v. Shenolt, 28 Beavan, 659.)

3. Irvin was not only Mrs. McHarry's agent but her *trustee*, and his acts this court, for the purpose of doing complete equity, will consider as those of a trustee. (Ludlow v. Maxwell, 4 Ky. Law Rep., 55.)

4. There was gross inadequacy of consideration, and that is always a suspicious circumstance; and if the inadequacy be combined with any unfairness or concealment, the deed will be set aside. (Beard v. Campbell, 2 A. K. Mar., 125; Easham v. Lamar, 10 B. M., 43; Gist v. Frazier, 2 Littell, 119; Cruise v. Christopher, 5 Dana, 181; Wright v. Arnold, 14 B. M., 646; Wilson v. Oldham, 12 B. M., 59; Pugh v. Bell's Heirs, 1 J. J. Mar., 406.

5. The proof is clear that Mrs. McHarry did not know that she was entitled to one-third of the Indiana lands in fee, or that Irvin owed her $150,000, or any other sum, or what her property was worth or the income it produced. She was laboring under mistakes of law and fact; and a contract based on a mistake of law or fact will be set aside. (Underwood v. Brockman, 4 Dana, 310; Anderson v. City of Louisville, 79 Ky., 334; Russell's Appeal, 25, P. F. Smith, 229.)

III. This is not a family settlement. In a family settlement there must be doubtful rights, a dispute and a compromise. Here all these elements are wanting.

But even family settlements will not be upheld when there is any suppression of truth or suggestion of falsehood. There must be perfect candor, frankness and full disclosure. (Story's Equity, sec. 217; Stapilton v. Stapilton, White and Tudor's L. C. Eq., and notes; Pickering v. Pickering, 2 Beav., 31, 56; Gordon v. Gordon, 3 Swanston, 400; Stewart v. Stewart, 7 J. J. Mar., 183; Groves v. Perkins,

McHarry v. Irvin's Ex'r.

6 Sim., 576; Durage v. White, 1 Swanst., 137; Kruson v. Kruson, 1'
Bibb, 183; Underwood v. Brockman, 4 Dana, 310, 318; Harvey v.
Mountjoy, 8 Beav., 439; Houghton v. Houghton, 15 Beav,, 278; Har-
vey v. Cook, 4 Russ., 58.)

IV. The plea of the statute of limitations amounts to nothing in this
case, for the statute does not apply to a continuous subsisting trust or
agency. Irvin's agency was continuous. (Hill on Trustees, p. 265;
Bohannon v. Sthreshley's Ex'rs, 2 B. M., 437; Helm's Ex'r v. Rogers,
81 Ky., 568.)

V. Mrs. McHarry's testimony is competent. (Larue v. Fairleigh, 5 Ky.
Law Rep., 319; Flood v. Pragoff, 79 Ky., 615,.616; Allen v. Russell,
78 Ky., 105.)

VI. Cases commented on: Roe v. Taylor, 45 Ill., 485; Lindsey v. Lind-
sey, 50 Ill., 79; Uhlrick v. Muhlke, 61 Ill., 499; Stone v. Wilbern, 83
Ill., 105; Pickerell v. Morss, 97 Ill., 220; Beverly v. Walden, 20
Gratt., 156; Simmerman v. Sanger, 29 Gratt., 9; Milliken v. Milliken,
24 Texas, 445; Graham v. Castor, 55 Ind., 559; Paine v. Roberts, 82
N. C.; Greenfield's Estate, 14 Pa. St., 489. Jenner v. Jenner, 63 Eng.
Ch., 359; Harrison v. Guest, 55 Eng. Ch., 431; Barton v. Wells, 5
Wharton, 225; Hyer v. Little, 20 N. J. Ch'y 443; Mann v. Betterly,
21 Vt., 327; Nace v. Boyer, 30 Pa. St., 99; Cowan's Appeal, 74 Pa.
St., 329; 2 Sandft's Sup. Ct. Rep., 542; Darnall v. Rowland, 30 Ind.,
342; Howe v. Howe, 99 Mass., 88; Hurlbut v. Phelps, 30 Conn., 42;
Logan v. McGinnis, 12 Pa. St., 27; Stockley v. Stockley, 1 Vesey and
Beames; Cory v. Cory, 1 Vesey, Sr., 18; Shartel's Appeal, 64 Pa. St.,
25; Bellamy v. Sabine, 22 Eng. Ch., 424; Hall v. Hall, 8 L. R. Ch'y
App., 430; Cowen v. Connell, 75 N. Y., 91, 99; Williams v. Williams,
L. R. Ch'y App. Cases, 294; Lies v. Stub, 6 Watts, 48; Light v.
Light, 21 Pa. St., 407; Persee v. Persee, 7 Clark & Finnelly's Rep.,
279; Greer v. Greer, 9 Gratt., 333; Ralston v. Turpin, 25 Fed. Rep.,
7; Gardner v. Gardner, 34 N. Y., 162; Hadley v. Latimer, 8 Yerg.
(Tenn.), 537; Williams v. Snead, 3 Cold. (Tenn.), 541; Dailey v. Kas-
tel, 56 Wis., 452.

BROWN, HUMPHREY & DAVIE, AND MUIR & HEYMAN FOR
APPELLEES.

1. The deed from Captain Irvin's wife to him, the deed from Mrs. Mc-
Harry to him, and Captain Irvin's will, were all made about the
same time, and in pursuance of a common design, and as the part of
one general plan of making a "family settlement;" and they are to
be read and considered together as one instrument. (Parsons on Con-
tracts, vol. 2, 503; Gammon v. Freeman, 31 Maine, 243; Taylor v.
Horde, 1 Burrows, 107; Rutland v. Crocker, 29 Vermont, 540; Ford
v. Belmont, 7 Robertson, N. Y., 97.)

2. The deed of Mrs. McHarry to Captain Irvin was not procured by

fraud.  Captain Irvin was an honorable man; his marriages were
from affection, not mercenary; he was the stay and support of the
McHarry family; the deed complained of was voluntarily suggested
by Mrs. McHarry herself, as a part of a "family settlement," which
she desired to be made, in view of her own age, and the speedily im-
pending death of Captain Irvin.  It was a wise and prudent family
settlement, in view of her age, condition and family relations, and
was not for Captain Irvin's benefit, who was dying; but for the bene-
fit of Mrs. McHarry herself, and her then only recognized child and
grandchild.

3. The preparation of this family settlement was openly and deliberately
made.  The deeds and will were prepared according to her wishes,
read over to her repeatedly, corrected and re-written.  They were two
or three times gone over, sentence by sentence, with her, discussed
and explained minutely and carefully to her, in the presence of her
friends.  She declared, in the presence of Dr. David Cummins, the
family physician; Mr. Lindenberger, the family banker; Dr. David
W. Yandell, Captain Hurry, Col. Brown and others, that she under-
stood the papers thoroughly, and that they were as she desired them
to be; and she, thereupon, freely and voluntarily executed the deed,
and had her friends, J. P. Byrne, Captain Hurry and Dr. Cummins to
attest it for her.  These facts exclude the idea of fraud.

4. The gift and conveyance to Captain Irvin from his wife, of her prop-
erty, was not suggestive of fraud, but was proper and commendable
in equity.  (Scarborough v. Watkins, 9 B. Mon., 548; Todd v. Wick-
liffe, 18 B. Mon., 906; Kennedy v. Ten Broeck, 11 Bush, 253.)

5. Mrs. McHarry was a woman of strong mental capacity, and understood
her deed; and it was made at her own instance, and in pursuance of a
long-cherished plan of hers.  The recitals therein, that a final settle-
ment had been made between her and Captain Irvin, were not false
recitals; for she and Captain Irvin had, in fact, and in view of his
fatal illness, come to a final agreement as to what they each wanted
of the other, which was, in legal effect, a final settlement, and the re-
cital of fifty thousand dollars as the agreed sum due her was inserted
at her own request.

6. The attestation of the deed by J. P. Byrne and Dr. David Cummins
was an affirmation and an implied voucher by them that she had full
capacity and understanding to make the deed, and that she executed
it freely and voluntarily in their presence.  (McMeekin v. McMeekin,
2 Bush, 79; Greenleaf on Evidence, vol. 2, sec. 691; Scribner v.
Crane, 2 Paige, 149; Greenfield's Case, 14 Pa. St., 496.)

7. A person who is *compos mentis*, even if in extreme old age, or of weak
or failing mind, may dispose of her property.  She may have perfect
capacity to dispose of her property, or to create a trust, and yet, from
age or otherwise, not have capacity to manage it for herself.  (Stewart

v. Lispenard, 26 Wendell, 311; Nace v. Boyer, 30 Pa. St., 99; Dornwall v. Rowland, 30 Indiana, 342; 2 Leading Cases in Equity, 1037, 1211; Vandensen v. Rowley, 4 Selden, 360; Greer v. Greer, 9 Grattan, 330; Hadley v. Latimer, 3 Yerger, 637; Talbott v. Hooser, 12 Bush, 409.)

8. Mrs. McHarry having signed and delivered this deed; with the declaration that she understood it, and was satisfied with it; and Captain Irvin and Mrs. Irvin having made deeds and wills in reliance upon her statement, Mrs. McHarry is now estopped and precluded from asserting that she did not in fact understand or assent to the deed. (Phillips v. Gallant, 62 New York, 256.)

9. There is no such relation of trust and confidence between a son-in-law and his mother-in-law as to require courts of equity to look with suspicion upon a gift by the mother-in-law to the son-in-law, as is done in cases of gifts between persons standing in fiduciary relations. (Bigelow on Frauds, 264, 266; Bradley v. Gifford, 2 Small & Gifford, 339; Fish v. Clelland, 33 Illinois, 238.)

10. There is no evidence to show that the deed from Mrs. McHarry was made under the undue influence of Captain Irvin; and such undue influence will not be presumed. (Milliken v. Milliken, 24 Texas, 427.)

11. An influence which results from attachment, affection or gratitude, or the mere desire to gratify a relative's wishes, is not undue influence; nor will a deed made from such influences be invalidated. (2 Minor's Institutes, 670; Simmons v. Songer, 29 Grattan, 24.)

12. The influence which a son-in-law may acquire over his mother-in-law by acts of kindness or dutiful attention, or correct conduct, is not undue influence. (Bigelow on Fraud, 264; Milliken v. Milliken, 24 Texas, 427; Simon v. Songer, 29 Grattan, 24.)

13. To avoid a deed on the ground of undue influence, it must be shown that the undue influence existed, and also that it was exercised at the particular time, and in procuring the particular deed. (Gardner v. Gardner, 34 New York, 162; Milliken v. Milliken, 24 Texas, 427; Howe v. Howe, 99 Mass., 88.)

14. The fact that a son-in-law has acted as his mother-in-law's agent in the management of her affairs, does not raise any presumption of undue influence over her, nor does it create any such fiduciary relation as to affect a deed of gift from her to him. (Milliken v. Milliken, 24 Texas, 427.)

15. A deed of gift from a principal to his agent does not come within the rule which throws suspicion upon conveyances received by persons occupying fiduciary relations to the grantor. (Uhlrich v. Muhlke, 61 Illinois, 499; Ralston v. Turpin, 25 Federal Reporter, 23.)

16. The counsel who drew the deed in controversy requested Mrs. McHarry to call in special legal counsel for herself; but she refused to do

McHarry v. Irvin's Ex'r.

so, saying that she did not wish or need it, and that she had fully made up her mind what were her interests, and what she wanted done, and that she wished a family settlement made just that way, and that the deed was just as she contemplated and desired. Under such circumstances, the fact that she had no independent legal counsel does not affect the question of the validity of the deed. (Ralston v. Turpin, 25 Fed. Reporter, 21; Harrison v. Guest, 6 De Gex, McN. & Gordon, 424; Jenner v. Jenner, 2 De Gex, Fisher & Jones, 358.)

17. Deeds of gift and conveyance, made in pursuance of a "family settlement," stand upon peculiarly favorable grounds, and the courts will not inquire into the adequacy of their consideration; nor will they be set aside except under very strong proof of fraud. They are most favored instruments in equity. (Williams v. Williams, Law Reports, 2 Ch'y Appeals, 304; Williams v. Snead, 3 Coldwell, 541; Bell v. Wilson, 1 Dev. & Batt. Eq., 182; Westby v. Westby, 2 Dr. & War., 503; 2 Leading Cases in Equity, 168; Daily v. Kastell, 56 Wis., 444; Bellamy v. Sabine, 5 L. J. (N. S.), 36; Stockwell v. Stockwell, 1 Veasey & Beames, 31; Stapilton v. Stapilton, 1 Atkyns, 8; Stewart v. Stewart, 6 Cl. & Fin., 911; Persee v. Persee, 7 Cl. & Fin., 280; Barton v. Wills, 5 Wharton, 227; Shartel's Appeal, 64 Pa. St., 25.)

18. It is not required of the grantee in such conveyances to prove that the grantor understood all of the complicated provisions of the family settlement. The understanding is presumed. (Stewart v. Stewart, 6 Cl. & Fin., 911.)

19. A deed of family settlement is not expected to be based on exact figures or calculations of amounts conveyed or received, but is made and sustained upon other considerations. (Bellamy v. Sabine, 5 L. J. (N. S.), 36.)

20. The arrangement between Mrs. McHarry, Mrs. Irvin and Captain Irvin was, that Mrs. Irvin and Mrs. McHarry would convey their respective interests to Captain Irvin, and he was at once (in view of his daily expected death) to make a will, by which their interests, as well as his own estate, should be placed in a carefully arranged and safe trust, for the benefit of Mrs. McHarry, and of her said daughter and grandchild, then the only recognized objects of her affection and bounty. Captain Irvin and Mrs Irvin having carried out their part of this agreement, and Captain Irvin having died, and it being impossible to now restore the status quo, Mrs. McHarry will not be allowed to rescind the settlement. (Frisby v. Parkhurst, 29 Md., 59; Meguiar v. Meguiar, 11 Bush, 142; Logan v. McGinnis, 12 Pa. St., 27.)

21. Captain Irvin being dead, and this suit being against the decedent's estate, and against his infant child, Mrs. McHarry is not a competent witness to attack the deed she made with him, nor to prove fraud or undue influence on his part. (Flood v. Pragoff, 79 Ky., 615; Harding v. Taylor, 78 Ky., 597.) Cited on this point in petition for rehearing:

Marion v. Lambert's Adm'r, 10 Bush, 295: Holcomb v. Holcomb, 95 N. Y., 316; Wharton on Evidence, secs. 466, 467; Hill v. Wilson, 8 Ch'y App., 900; Welch v. Adams, 63 N. H., 344; Wharton on Evidence, vol. 1, sec. 467, note; Paige v. Bernstein, 102 U. S., 668; Montgomery v. Simpson, 31 N. J. Eq., 1; Goolet v. Kelly, 78 Ala., 218; Lawhorn v. Carter, Surviving Part., 11 Bush, 7; Harpending v. Daniel, 80 Ky., 449.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

In February, 1857, Francis McHarry died, resident of the city of Louisville, intestate, leaving appellant, then about forty-eight years of age, his widow, and Amelia, Francis A. and Florence, his only children and heirs at law, the first named of the three having just arrived at full age and the other two being infants. In due time appellant was appointed administratrix of the estate and guardian of the infants. But, in about five months after the death of her father, Amelia became the wife of James F. Irvin, then between forty-five and fifty years old, and the entire estate was immediately turned over to him to manage and control as the agent of appellant, which he did continuously and without hinderance by her until December 16, 1882, when a *tripartite* deed between appellant of the first, James F. Irvin of the second, and J. H. Lindenberger of the third part, that is the principal subject of controversy in this action, was executed.

James F. Irvin died in March, 1883, testate, leaving Florence Irvin, his widow, Guy Irvin, his infant and only child, and Lindenberger, Brown and Dowling executors of his will, all of whom are appellees. This action was instituted by appellant in September, 1883, to set aside the deed mentioned, upon the

McHarry v. Irvin's Ex'r.

ground of fraud by James F. lrvin, actual and constructive, and mistake by her · as to the nature of her title to some of the property conveyed thereby, and as to the extent of her interest in the estate of her deceased husband. In that deed are contained substantially the following recitals :

1. That appellant is entitled to dower and distributable share in her husband's estate ; has, since the death of her husband, resided in the family of the second party, and her business has, at her request, been conducted by him in all respects to her satisfaction.

2. That at the request of the second party, and in view of his impaired health, "there has been between the first and second parties *a full, complete and final settlement of all and every the accounts, business and transactions of every kind and character between them, up to and including the date hereof, and by said settlement of all accounts as aforesaid, there has been and is found to be the sum of* $50,000 *belonging to the first party, in the possession, custody and control of the second party as her agent, which said sum of* $50,000 *is now by the first and second parties distinctly and conclusively agreed to be in full of all demands, claims, estate, principal, interest, income, avails, accretions, dower, rights of distribution, and all other rights of the first party.*"

3. That the first party is desirous of settling the said sum to the use and on the trusts thereinafter set forth. And the second party is desirous to secure the first party an ample income for life, and in like manner to her sister, Mrs. Isbell.

And thereupon the first party, by the terms of the deed, for the recited "consideration of the sum of $50,000 paid over as representing the *ascertained balance* as aforesaid, by the second party to the first party, * * doth * sell and convey unto the third party all said sum of $50,000, *ascertained* as aforesaid, and all the rights of dower and distribution of every kind, * and all her estate, real, personal and mixed, wherever situated," to be held in trust, and upon the condition that at the death of the first party all the property and accumulations thereof are to be delivered and paid over to the second party, and belong to him in fee-simple, or to such persons and upon such conditions as he, the second party, may by his will appoint, in case he dies before the first party.

It is further agreed, that there shall be paid out of the trust fund and property, annually, during her life, to the first party, two thousand dollars, and a comfortable residence furnished to her; and to Mrs. Isbell, annually, during her life, and upon condition she remains with the first party, one thousand five hundred dollars.

In their answer, appellees file and rely on, as a defense to the action, a writing dated May 12, 1880. But appellant denies it is binding or valid, and asks that it be held for naught upon the ground of fraud, and because, as she specially pleads, it is not her act and deed.

In that writing, which is signed by appellant alone, though called an agreement between her and James F. Irvin, it is recited that a full settlement and final accounting had that day been had between the parties,

embracing every account, transaction, claim and demand, and said Irvin had paid over to appellant all money and property of every kind in his hands belonging to her, and she thereby acknowledged the receipt of the same, and discharged him from all claims against him and his wife, Florence Irvin. And in the language of the instrument, "for the purpose of more effectually carrying out the intention of the parties, the said Emily McHarry, in consideration of the premises * hereby sells * and transfers to the said Florence Irvin every account, claim and demand due or to become due * * from James F. Irvin."

As pertinent to the question of the validity and force of these two papers, we will first ascertain, as far as practicable and necessary, the character, value and condition of the estate of Francis McHarry at the time Irvin took control and management of it as the agent of appellant, and the amount she was entitled to receive from him December 16, 1882. But in the absence of a commissioner's report, which the judgment of the lower court dismissing the action precluded, it would be premature, even if practicable, to determine the exact value or amount of either what Irvin received or what appellant was entitled to at the date mentioned.

It, however, satisfactorily appears that Francis McHarry left at his death a large and productive estate, consisting of more than two thousand acres of land in Indiana, besides several houses and lots in New Albany, a farm of one hundred acres in Kentucky, one-half the franchise and property of the Louisville and New Albany ferry, a cement mill and sixty acres of land in Shippingsport, near Louisville, an interest in a ware-

house in the same city, besides a large amount of personal property.

The indebtedness of the estate was but little over ten thousand dollars, besides a balance of the purchase price of the ferry, payable in cement, all of which indebtedness was discharged in a short time with the income from the estate.

The precise amount of receipts and disbursements by Irvin while he was acting as the agent of appellant never can be arrived at, for, so far as this record shows, no books were kept by him subsequent to December 31, 1867. But, from evidence of joint owners, who have accounts of the net profits of the ferry, it appears that the share thereof belonging to the McHarry estate, annually paid over to Irvin, amounted from March, 1858, to February, 1864, to thirty-nine thousand nine hundred and fifty dollars, and from the latter date to December 16, 1882, to about one hundred and fifty thousand dollars, making the whole amount received by him near one hundred and ninety thousand dollars.

The exact amount received by him from other sources, between 1857 and 1865, cannot be arrived at, though it was a very large sum; for it appears that money loaned on real estate security, and used by him in the purchase of real estate, between the years 1858 and 1865, amounted to upwards of ninety thousand dollars. And on the — day of ——, 1865, the cement mill and land on which it was situated was sold for one hundred and fifty thousand dollars in gold, all of which was received and thereafter used by him. Though a tract of land, the title of which was in Irvin, was sold at the same time, and estimated at thirty thousand dollars, and

appellees contend should be deducted from the purchase price, leaving one hundred and twenty thousand dollars belonging to the McHarry estate. Without taking into account rents of land or of the warehouse, or profits of the cement mill from 1857 to 1865, or interest on the amounts received and used by him, he was indebted to the estate, and as agent of appellant, December 16, 1882, when the deed in question was executed, at least the sum of three hundred and ten thousand dollars.

Without making a minute calculation, which is not necessary to a decision of the questions before us, it may be therefore safely assumed that when that deed was made Irvin's indebtedness to appellant was more than double the sum of fifty thousand dollars, stated in it as the ascertained balance. In addition to his indebtedness, she was, under the law of Indiana, entitled absolutely to one-third of the real property in that State left by her husband, which was worth between twenty thousand and twenty-five thousand dollars, that likewise passed by that deed.

It is claimed in the pleadings, and contended by counsel, that Irvin had, at the time of his marriage in 1857, a considerable estate of his own, which was used in extricating the McHarry estate from indebtedness. But there is no competent evidence before us that he had any property or money besides a farm in the southern part of this State, worth perhaps two thousand five hundred dollars. On the contrary, the books kept by his direction show but a single credit to his account, and it does not satisfactorily appear that even that sum, which was about six thousand dollars, was actually advanced or paid out of his own means.

vol 85—22.

The evidence shows that appellant is a plain, economical woman, of simple and unostentatious wants and habits, and that throughout the entire period her expenditures were small.

It seems to us clear that the consideration for the conveyance of December 16, 1882, regarding it as a contract of sale and purchase, was grossly inadequate.

But inadequacy of consideration of itself is not generally sufficient to avoid an executed conveyance, though it should always induce close scrutiny of the circumstances attending the transaction. It therefore becomes necessary, in order to properly determine the issues of fraud and mistake involved, to review the conduct of Irvin, the immediate beneficiary of that conveyance, in respect to the estate placed in his hands as agent, and towards those to whom it belonged.

The first notable event that occurred after he assumed control was in 1858, when the only son of appellant became estranged from her, and never afterwards was sheltered under the same roof with her.

September 14, 1859, Irvin procured a conveyance by his wife Amelia of her interest in the estate to appellant, who immediately reconveyed it to him.

September 20, 1859, he purchased from Francis A. McHarry, the son, his interest in the estate at the price of twenty-eight thousand dollars, which was far from its full value, and though he took the title to himself, the evidence satisfactorily shows the consideration was paid with the proceeds of the estate.

In January, 1869, Amelia Irvin died, leaving no children. And in January, 1874, after a tour together of about fifteen months in Europe, he and Florence, the

McHarry v. Irvin's Ex'r.

second daughter, were married, he being upwards of sixty and she about twenty-six years of age.

There is no evidence that the son of appellant, either before or after the estrangement, treated her disrespectfully. He was somewhat dissipated, and the sale of his interest in the estate to Irvin shows he was improvident. But he never gave her any offense, except that, in her language "he married a woman I did not like." Nor, on the other hand, does it appear she was naturally implacable, harsh, or wanting in maternal affection. It does not appear that Irvin openly used his influence to keep mother and son apart, except that, when absent in Europe, he directed his agent to loan money to the son, upon his promise to stay away from Louisville. Nor is there evidence that he at any time made the slightest effort to reconcile them.

In her own language : "I had every confidence in the world in Irvin. I did not think he would do any thing wrong ; I thought he was perfection. I had more confidence in him than I had in myself, because I thought he understood things better than I did. My confidence in him was perfect and complete, and I thought every thing he did was right ; and I did whatever he asked me to do, and this continued to his death."

On the other hand, one witness describes Irvin as secretive, and another testifies that "Capt. Irvin was looked up to by the family as an authority on all subjects, and what Capt. said was law."

We thus have, in the blind confidence of this plain, uneducated woman, and the dominating will of this man, an explanation of the unnatural estrangement of mother and son for twenty-five years ; her ready ac-

·quiescence and aid in the conveyance by her elder daughter of her interest in the estate ; her submission to a sale by the son of his interest at a price which she might, by inquiry, have learned was at a great sacrifice, and paid for out of the estate ; and her consent to the marriage of the second daughter, all done for the bene-·fit of Irvin, and all, as we think the record shows, in furtherance of his design to possess the entire estate.

Such being the relation and attitude of appellant and Irvin at the date of the two papers of May 12, 1880, and December 16, 1882, there is no reason to discredit her statement that she did not understand the effect of either of them, but signed both in ignorance of her rights and interests at his request, and because she trusted him.

As to the paper of May 12, we think very little need be said.

Appellant alleges in her pleading that she signed it without reading it, or hearing it read, and no witness to it testifies in this case that she read or understood it. On the contrary, one of them states facts which make it evident she did not understand it. In one clause she is made to acknowledge a full settlement between her and Irvin had been made, and all the money and property she was entitled to had been paid over to her. And in the other clause, she conveys and transfers to Florence Irvin her claims and demands on James F. Irvin. It is impossible to reconcile the two clauses of that paper with each other, or the latter with the deed of December 16, 1882. For if she had already, by the paper of May 12, 1880, conveyed and transferred to Florence Irvin her claims and demands

against him, she could not, by the deed of December 16, transfer such claims and demands, then called "an ascertained balance of fifty thousand dollars," to Lindenberger, trustee.

Neither Dowling, one of the executors of the will, who, as an attorney, wrote the paper of May 12, nor Florence Irvin, testify in this case in regard to it. For the reasons stated, and others to be stated alike applicable to the deed of December 16, we think the paper of May 12 should be held void; and that even Irvin regarded it of no effect is shown by his failure to inform Brown, his executor and lawyer, of its existence before the deed was written and executed.

In that deed it is stated with precision, and in terms that fully and distinctly convey the idea, that a settlement and accounting had taken place between Irvin and appellant; yet the evidence in this case places it beyond dispute that no settlement had ever taken place between them.

We are thus at the beginning confronted with a false, and, as we think must be regarded, a fraudulent statement, made not as mere form, but made in such manner as to bind appellant as well as to deceive her. For when we consider the relation of the two parties, her confidence in him, and her ignorance of the actual condition of the business of the estate, and inability to make such settlement, we are forced to the conclusion that she accepted that statement as a declaration on the part of Irvin that fifty thousand dollars was the balance due her and believed it.

If the object was not to deceive and overreach her, why was the false statement made?

Both Brown, who wrote the deed, and Lindenberger testify the deed was explained to her, and give it as their opinion she understood it. But she just as positively swears she did not understand it, or give particular attention to it, trusting in Irvin, and willing to do what he directed, because she believed he would do right.

No doubt Brown in good faith attempted to explain the nature and effect of the deed; but in at least two respects it can not be explained in such manner as to relieve it of the character of an unconscientious bargain, and fraudulent device on the part of Irvin to deprive her of what he justly owed her, and of property belonging to her.

1. As already in effect stated, no satisfactory explanation can be made in regard to the false statement that a settlement had been made and a balance of fifty thousand dollars ascertained.

2. She owned absolutely one-third of the Indiana lands, worth not less than twenty thousand dollars; yet, although Brown swears that he was, at the time he wrote the deed, ignorant of her right to the land under the Indiana law, the deed is so written as to pass her title thereto, and it is now claimed and held by Irvin's executors, or by Lindenberger, under that deed.

The doctrine is too well-settled to need a reference to authorities, that "contracts between principal and agent should be jealously scrutinized, and slight circumstances of inequality, surprise and hardship may be sufficient to vacate them, even sometimes without proof of fraud."

In this case we have not merely concealment by the

agent of the amount due his principal, which he knew and she did not nor could inform herself, but a false statement, or what we think had the same effect as a direct false statement, as to the balance due. For, as already said, she actually conveyed by that deed more than double in value of what it purports to convey, and what she was induced to believe it conveyed.

We think it satisfactorily appears from the circumstances of this case, independent of her own statement as a witness, that at the date of the deed she was ignorant of the nature of her title to the Indiana lands. And it is equally well established that Irvin did, at the time, know she had a fee-simple title thereto, and knowing, it was his duty to inform her of the fact, and his failure to do so must be held as fraudulent and sufficient to vacate the deed.

But it is relied on as a defense to this action, that appellant was fully informed of the fact that the execution of the deed was intended as part of the plan of a family settlement, which included, with the deed, a subsequent deed by Florence to James F. Irvin of all her interest, and his will devising all his estate to Florence and Guy Irvin, the son. And as appellant intended and desired that all her estate should go to her daughter and grandson, she was not defrauded by the deed made to carry out that plan.

But we do not understand this to be a family settlement in the sense of a compromise of doubtful or disputed claims, but a sale to James F. Irvin. And even if it was a family agreement or compromise, the circumstances attending the transaction make it a case of at least constructive fraud. For in such cases an agree-

ment made in ignorance by one party of material facts, which it is the duty of the other side to disclose, would render the agreement invalid. (Story's Equity Jurisprudence, vol. 1, sec. 217.)

The fact that appellant, situated as she was, and under the influence of Irvin as she had been for years, did, at the date of the deed, desire to leave her property to her daughter and grandson, ignoring the existence of her own son and his children, does not preclude her from now having that unjust and fraudulent conveyance set aside. For it may be, if fully and truly informed at the time of the actual amount of her wealth, she might have found a warm place for the discarded son. But be that as it may, we think she was induced to make that deed, not merely through mistake and ignorance of the kind and value of her estate, which it was the duty of Irvin to disclose to her, but that she was then, as she had been for years, under the irresistible influence of her son-in-law, who caused the deed to be made as part of a long cherished and partly executed plan to possess himself of the entire estate of Francis McHarry, which was fully accomplished by the deed from his second wife, made December 19, 1882.

In conclusion, it is proper to say there is nothing in this record reflecting upon the personal or professional integrity of Brown, who prepared the deed; as he was informed it was a settlement made according to the wish of appellant, and was ignorant of the actual amount due to her and of her title to the land.

Wherefore, the judgment is reversed, and cause remanded, with directions to cancel the paper of May 12, 1880, and the deed of December 16, 1882, and for further proceedings consistent with this opinion.

To a petition for rehearing, filed by counsel for appellees, Judge LEWIS delivered the following response of the court :

We did not base our opinion upon testimony of appellant that was incompetent.

The value and amount of the McHarry estate that went into the hands of Irvin as agent, and his disposition of it, so far as shown, his purpose to possess himself of the whole of it, the means resorted to in order to accomplish that purpose, and his consequent liability to appellant, all satisfactorily appear independent of her testimony.

Her evidence was not relied on, nor necessary to convince us that the paper of May 12, 1880, by which, without reason or equivalent, she gave up all her interest in the estate and became entirely dependent, was procured by the undue influence of Irvin, and signed by her without understanding its nature and effect.

Brown, the attorney and executor of the will of Irvin, and Lindenberger, one of the parties to the deed of December 16, 1882, and also executor, both testified to what took place in regard to it, before and after, as well as at the time it was executed ; and the inference intended by appellees to be drawn, and which must necessarily be drawn from their testimony, left unexplained, is, that appellant executed the deed freely, voluntarily, and with full knowledge of its contents, purpose and effect, and consequently is bound by it.

It was therefore clearly competent for her, under subsection 2c, section 606, Civil Code, to testify concerning the same transaction, and in connection therewith to state she executed the deed because Irvin requested her

to do so, and did not understand or attempt to understand it, because she had confidence in him, and believed he would ask her to do only what was right.

We cannot understand why so much space is occupied in the petition for rehearing to prove that appellant's testimony as a witness that she had confidence in and trusted Irvin, is incompetent, or how even, if it was so, appellees have been prejudiced thereby, when the same fact is plainly and conclusively shown by other evidence in the record; substantially admitted in the pleadings; appellant is made to say it in the sixth clause of the deed; and counsel concedes it in a subsequent part of the petition for rehearing.

It seems to us clear that the deed in question is one of bargain and sale. For it is expressly stated therein, that for the consideration of an annuity of three thousand five hundred dollars to be paid during her life, she grants, bargains, sells and conveys unto Lindenberger, all the ascertained balance of fifty thousand dollars, her right of dower, and all accumulations thereof, rents, issues, profits and avails of every kind, and all her estate, real, personal and mixed, wherever situated, to be paid over and delivered at her death to and held and enjoyed by Irvin in fee-simple; subject to his unconditional power of appointment by will in case he dies before her.

But let it be conceded that the transaction was mixed with motives of bounty, still Irvin, the beneficiary, was not absolved from the duties imposed upon him as her agent.

The relation of parent and child is, of course, to be always considered in determining, as a question of fact,

whether a gift or bounty from one to the other has been unfairly obtained ; for the same implication or presumption of undue influence or fraud does not arise in such case as when the parties are strangers, and the relation of principal and agent exists.

But there is no reason for a rule, nor is there a rule, which will enable a son-in-law, who is her agent, to profit by a gift or purchase obtained from his mother-in-law by undue influence or fraud, or exempt him from the consequences thereof, if the fact be established by proof.

The lower court dismissed this action without passing upon the question of limitation, and we did not, therefore, refer to it in the original opinion, except incidentally. But as the question is made in the pleading, and litigation and expense will, perhaps, be saved, by determining it now, we will do so.

There is no question made, nor is there any room for any, as to either the fact or nature of the agency. But it appears that, soon after the marriage of Irvin to the eldest daughter, the entire estate was by appellant placed in his hands as her agent for an indefinite time, and that the agency never was abandoned by him, nor revoked by her, nor was a settlement made between them, but it continued until December, 1882, when the deed in question was made.

It seems to be well-settled that the confidential relation of principal and agent being thus established and continuing, the statute of limitation has no application ; the reason being, as aptly stated, that "while the relation continues there is a privity between the parties, and there is nothing to set the statute of limitations in operation."

In our opinion, therefore, the statute constitutes no bar to the recovery by appellant in this action of what she may be entitled to from Irvin as her agent.

It was not intended by any thing said in the opinion to prevent necessary investigation and proof, in the discretion of the lower court, of the true amount to which appellant may be entitled.

The opinion was rendered in this case after a thorough investigation of the evidence and consideration of all the questions of law, and we perceive no reason suggested in the petition for rehearing sufficient to require a change of it.

Petition overruled.