JOSEPHINE P. WALDRON, ADMINISTRATRIX, AND EDWIN
WALKER, ADMINISTRATOR,

v.

SEROTIA A. ALEXANDER.

*Administration—Services Rendered at Request of Deceased—Claim for
—Limitations.*

Upon a claim filed against the estate of a deceased person, the same being
based upon services rendered parents of the deceased at his request and
upon his promise to pay therefor, this court holds that the statute of limita-
tions did not apply to such portion of said claim as accrued more than five
years before the filing thereof, for the reason that the evidence shows that
it was the intention of the parties that deceased should be the depositary
of the earnings of the claimant, and that calls for payment were to be made
to suit her convenience, and declines to interfere with the judgment in her
behalf.

[Opinion filed February 12, 1890.]

APPEAL from the Superior Court of Cook County; the
Hon. RICHARD W. CLIFFORD, Judge, presiding.

Mr. A. J. EDDY, for appellants.

Counsel for appellee contend that the several payments
made took the claim out of the operation of the statute, and
that the promise to settle and pay the claimant was sufficient
to remove the bar thereof.

Any acknowledgment, either by way of part payment or
by way of new promise, to remove the bar of the statute must
be an acknowledgment of or a part payment upon a particu-
lar debt or account; there must be no uncertainty as to the
debt referred to, and while the debt may be made up of sev-
eral items or of several things, the record must show conclu-
sively that when the debtor made his acknowledgment or
part payment, he had in mind the specific debt or account sup-
posed to be revived. Barnard v. Bartholomew, 22 Pick.
291; Davis v. Steiner, 14 Pa. St. 275; Martin v. Broach, 6
Ga. 21; Robbins v. Farley, 2 Strobh. (S. C.) 348; Conway v.

Rayburn, 22 Ark. 290; Lockhart v. Eaves, Dudley (S. C.), 321; Buckingham v. Smith, 23 Conn. 453; Hale v. Hale, 4 Humph. (Tenn.) 183.

In Ditch, Adm'r, v. Vollhardt, 82 Ill. 134, there was no uncertainty whatsoever as to the debt referred to, as it was a claim for wheat sold. And speaking of the amount in controversy, the court says, on page 136:

"Here the amount was fixed, certain and agreed upon between the parties, and the case falls clearly within the provisions of the statute. There was, therefore, no error in allowing six per cent interest."

Schmidt v. Pfau, 114 Ill. 494, was an action for services claimed to have been rendered by Pfau to the defendant. Plea of general issue and statute of limitations.

How far this case is from being parallel to the one at bar is plain from the language of the court on page 503, where it says:

"It was a conceded fact that appellee worked for the company for three years, and that there had been no settlement or attempt at settlement between the parties on account of his services until he stopped work altogether on the 25th of February, 1880, and appellant himself swears that it was the original agreement to pay appellee $300 a year. Assuming this to be true, there was no ground whatever for interposing the statute of limitations, for the five years did not commence running as to the first year's service until the 25th of February, 1878, and the suit was commenced on the 21st day of February, 1883."

An acknowledgment to remove the bar of the statute may be:

a. By acknowledgment or promise sufficient to revive the debt.

b. By part payment, which operates as an acknowledgment of debt and promise to pay it.

In both cases certain requisites are absolutely essential to make the acknowledgment effectual.

1. A mere general admission of indebtedness is insufficient. Shitler v. Bremer, 23 Penn. St. 413; Pray v. Garcelon, 17 Me. 145.

2.  The acknowledgment must be shown to relate to the particular demand in question. Buckingham v. Smith, 23 Conn. 453; Smith v. Moulton, 12 Minn. 352; Walker v. Griggs, 32 Ga. 119; Baxley v. Gayle, 19 Ala. 151; and cases above cited.

3.  A promise to settle is insufficient. Bell v. Crawford, 8 Gratt. (Va.) 110; Leigh v. Linthicum, 30 Texas, 100; Spong v. Wright, 9 M. & W. 629; McClelland v. West, 59 Pa. St. 487; Marqueze v. Bloom, 22 La. An. 328; Brayton v. Rockwell, 41 Vt. 621; Currier v. Lockwood, 40 Conn. 349; Weaver v. Weaver, 54 Pa. St. 152; Goove v. Chamberlain (Va.), 5 S. E. Rep. 174; Shaeffer v. Hoffman, 113 Pa. St. 1; Bloomfield v. Bloomfield, 7 Ill. App. 261.

4.  "There must not be any uncertainty as to the particular debt to which the admission applies." Wood on Limitations, page 151; Eckford v. Evans, 56 Miss. 18; Landis v. Roth, 109 Pa. St. 621.

5.  The acknowledgment "must be shown unmistakably to relate to the particular debt or demand which is sought to be revived by it, or the acknowledgment must be attended by circumstances which will enable a jury to ascertain definitely what debt was intended." Wood on Limitations, page 155, and cases cited; Hussey v. Kirkman, 95 N. C. 63.

6.  The expression of a wish to pay a debt, as "Please send me the amount due. Want to arrange and pay it off," not sufficient. Johnson v. Johnson, 5 S. E. Rep. (Ga.) 629.

7.  Where a part of the indebtedness is barred by the statute and a part not, "a general acknowledgment will not remove the bar, because it may have been intended simply to apply to the indebtedness to clear the statute." Wood on Limitations, 170, 171; Morgan v. Walton, 4 Pa. St. 321; Suter v. Shuler, 22 Pa. St. 308; Weisner v. Stein, 97 Pa. St. 322; Burn v. Boulton, 2 C. B. 476; Milles v. Fowkes, 5 Bing. N. C. 455; Gartrell v. Linn, 4 S. E. Rep. (Ga.) 918.

8.  "In order to make a money payment a part payment within the statute, it must be shown to be a payment of a portion of an admitted debt, and paid to and accepted by the creditor as such, accompanied by circum tances amounting to

an absolute and unqualified acknowledgment of more being due, from which a promise may be inferred to pay the remainder." Wood on Limitations, 221, 222; Tippets v. Heane, 1 C. M. & R. 252; Smith v. Simms, 9 Ga. 418.

9. "If there is a mere naked payment of money without anything to show on what account or for what reason the money was paid, the payment will be of no avail under the statute. If the party merely says, ' place the money to my account,' without specifying any amount or any debt, and the creditor appropriates the payment in part liquidation of the debt barred by the statute, without the privity or assent of the debtor, this will be of no avail as an acknowledgment of the debt by the debtor." Wood, Limitations, 225.

10. "If there is a disputed and an undisputed debt, or if there are two debts—one barred by the statute and the other not barred—a general payment on account will be of no avail at common law under the statute, because it is left uncertain to which debt the payment was intended to be applied." Wood, Limitations, 225; Burn v. Boulton, 2 C. B. 476; Milles v. Fowkes, 5 Bing. N. C. 455.

11. And "the burden of establishing a part payment sufficient as to time and other circumstances to remove the statute bar is upon the plaintiff." Wood, Limitations, 225, 226.

Messrs. CRATTY BROS. & ASHCRAFT, for appellee.

The statute of limitations would not begin to run until demand made, and the claim is a running account and therefore not barred. Payne v. Gardiner, 29 N. Y. 146; Catling v. Schoolding, 6 T. R. 189; Prachy in re Seaber, 1 Deacon, 551; Van Swearingen v. Harris, 1 W. & S. (Pa.) 356; Coster v. Murray, 5 Johns. Ch. 522; Union Bank v. Knapp, 3 Pick. 96; Tucker v. Ives, 6 Cow. 193; Bass v. Bass, 6 Pick. 362; McClelland v. Crafton, 6 Me. 308; Barnard v. Bartholomew, 22 Pick. 291; Nesom v. D'Armond, 13 La. 294; Dyer v. Walker, 54 Me. 18; Sibley v. Lombert, 30 Me. 253; Baker v. Joseph, 16 Cal. 173.

The several payments made took the claim out of the

operation of the statute.    Barnard v. Bartholomew, 22 Pick. 291; Taylor v. Frost, 132 Mass. 30; Walker v. Butler, 6 El. & Bl. 506; Nesom v. D'Armond, 13 La. 294; Dyer v. Walker, 54 Me. 18; Sibley v. Lombert, 30 Me. 253.

The promise to settle and pay the claimant was sufficient to remove the bar of the statute.    Hazlebacker v. Reeves, 12 Pa. St. 264; Davis v. Steiner, 14 Pa. St. 275; Moore v. Hyman, 13 Red. (N. C.) L. 272; Hart v. Boyd, 54 Miss. 547; Martin v. Broach, 6 Ga. 21; Arcy v. Stephenson, 11 Red. (N. C.) L. 36; Robbins v. Farley, 2 Strobh. (S. C.) 348; Conway v. Rayburn, 22 Ark. 290; Lockhart v. Eaves, Dudley, (S. C.) 321; Buckingham v. Smith, 23 Conn. 453; Whitney v. Bigelow, 4 Pick. 110; Minkler v. Minkler, 16 Ver. 193; Lord v. Harvey, 3 Conn. 370; Barnard v. Bartholomew, 22 Pick. 291; Thompson v. French, 10 Yerg. (Tenn.) 453; Hale v. Hale, 4 Humph. (Tenn.) 183; Kittredge v. Brown, 9 N. H. 377; Hart v. Boyd, 54 Miss. 547; Ditch, Adm'r, v. Vollhardt, 82 Ill. 134; Schmidt v. Pfau, 114 Ill. 494.

GARNETT, J.    Elijah S. Alexander died intestate in Chicago in February, 1886.    Appellants were appointed administrators of his estate by the Probate Court of Cook County.    In April, 1887, appellee filled in that court a claim against the estate for eighteen years' service in nursing and caring for the parents of the deceased, residing at Brattleboro, Vermont, under a contract with deceased, the amount of the claim being $18,000 and $12,299 interest thereon.    Another item of $10,000 was included in the claim, but as it was withdrawn by *remittitur*, it is of no importance in the case.    The claim was allowed to the extent of $9,500 by the Probate Court, and the claimant appealed to the Circuit Court, where there was a trial before a jury, a verdict being rendered for the claimant in the sum of $41,800, which included the $10,000 item and $4,953 interest thereon.    A *remittitur* of $14,953 being entered, appellant's motion for a new trial was overruled and judgment entered for $26,847, which appellants pray may be reversed.

Appellee was a sister of the deceased.    She was born about

1833, and educated as a music teacher. About the year 1857 she was engaged in teaching music in a college in Virginia, but returned to the home of her parents in Brattleboro, at the breaking out of the war of the Rebellion. Soon after that she was employed in her profession in Boston, but returned to her parents in Brattleboro, in June, 1867, on account of a severe illness of her mother. Her father was then about sixty years of age and her mother sixty-six years. The latter was in very poor health, and in fact had not enjoyed good health after she was married. Elijah S. Alexander was a resident of Chicago, where he had been successfully engaged in business for some time prior to 1867. In the summer of 1867 he visited his parents at their home, and became impressed with the fact that they needed some one to look after their comfort and take charge of their household affairs. He then told his sister, Serotia, that she must give up teaching and stay at home to take care of their father and mother. She objected to doing so, saying that she enjoyed her profession, that she had $1,000 a year salary and her board, when she was South, was then doing still better, and that he could not afford to pay her. He told her that it made no difference what she could earn at her profession, that he would pay her more than she could earn, and that he wanted to feel easy in his mind about his father and mother. Before he left for his home that summer, appellee agreed with him that she would stay with their father and mother upon the terms he had proposed and she did remain there, faithfully performing the duties thus undertaken until her brother's death in February, 1886. During those eighteen years he generally visited his parents once a year, though sometimes he would be absent for two years. At the time of these visits he paid his sister small sums of money, varying from $20 to $100, and was in the habit of saying to her, "Pass this to my credit and it will keep our contract alive." On one occasion soon after the contract was made he asked her how much money she wanted, and she told him that she had little use for money, that she did not go anywhere, had no chance to spend money, and that she preferred to have him keep the

money in his hands, as she would have to invest it somewhere, and she felt safer to have it with him than anywhere else. He assented to the suggestion and agreed to pay her interest. At one time something was said about his giving her his note, but he said there was no necessity for it, that the account was just as good as long as he kept it alive, and if she gave him credit it would be just as well as it would be to have a note.

The last payment he made to her in April, 1885, when he handed her $20 and said, "I would give you more now, but I have just money enough left to take me back to New York."

Proof of these facts, it is true, comes from appellee's father, mother, and her brother Charles, but they are corroborated as to the fact of the contract by several disinterested witnesses.

The statute of limitations was pleaded by appellants to all of the claims that accrued more than five years before the filing of the claim in the Probate Court. No claim is made in behalf of appellee that any written evidence of the contract ever existed. So the question whether the claim is of a character to which the statute of limitations applies may be regarded as the main point at issue. The statute is for "the benefit and repose of individuals, and not to secure general objects of policy or morals. Its protection may, therefore, be waived by those who assent in legal form, and when acted upon, such waiver becomes an estoppel to plead the statute." See Quick v. Corlies, 39 N. J. L. 11, where it was held that the statute was not a good defense to a note in which it was agreed that the note "is not to outlaw by the statute of limitations."

In another class of cases it is implied from the purpose of the contract that the promise is continuing, and although the promisee may, at his pleasure, demand performance of the promisor, yet he is not bound to do so, and the statute does not begin to run until demand and refusal. Bank notes payable on demand are of that character, suit thereon being maintainable at any time within the period fixed by the tatute after demand made. F. & M. Bank of Memphis v. White, 2 Sneed, 482; Thurston v. Wolfborough Bank, 18 N.

H. 391; Morse on Banks & Banking, 466. The same is true of general bank deposits. Brahm'v. Adkins, 77 Ill. 263.

In Payne v. Gardner, 29 N. Y. 146, the suit was on the following instrument:

"$1,000.　　　　　NEW YORK, 9th May, 1848.

"Received from Cap. William H. Payne, one thousand dollars, which is to his credit on our books, at six per cent interest.

"SLATE, GARDINER & HOWELL."

The court held that the paper did not, by itself, show conclusively whether the transaction was a loan or a deposit, but that the *intention* of the parties was to govern. From a consideration of the attending circumstances, the court reached the conclusion that it was the intention to make a deposit of the money, and the defense of the statute of limitations was overruled on the ground that there was no right of action against the depositaries until actual demand made, at which time, and not before, the statute began to run.

In Boughton v. Flint, 74 N. Y. 476, the widow of David Flint sought to recover of his estate the sum of $800 and interest thereon from April 15, 1859. This sum was the proceeds of notes and a bond and mortgage, which had been taken for the purchase money on a sale of real estate belonging to her. All the money secured by these different instruments had been collected by the husband in his lifetime, and he recognized the right of his wife to the fund. After it had been received by him he offered to pay it over to her, and she requested him to keep it for her until she should call for it, to which he consented. For the estate it was insisted that the claim was barred by the statute of limitations, but the court held that as there was no evidence that the money had ever been demanded of the husband, or that he had refused to pay it, or laid any claim to it hostile to his wife, the statute was not a bar.

Authority more nearly in point is found in Stanton v. Est. of Stanton, 37 Vt. 411, where the claim was on this instrument:

"$400. For value received I promise to pay E. G. Stanton,

four hundred dollars in produce or wood from the farm on demand as I may want to use the same, on interest.

" Painsville, July 27th, 1850.

"H. STANTON."

The court, after stating that the use of " I " instead of " he " was a clerical mistake, held that the statute of limitations did not apply for the reason that " when the instrument itself indicates that the calls for payments were to be indefinitely prospective, and to be made as might suit the wants and convenience of the payee, there is no ground furnished upon which the law can assume any fixed point, as a limit to reasonable time for making a demand, and therefrom give operation to the statute of limitations." See also Smith v. Town of Franklin, 17 Atl. Rep. 838; Robertson v. Oates, 12 S. W. Rep. 54.

The facts in the case at bar show that the parties to the contract intended Elijah should be the depositary of the earnings of his sister, and that she should have such sums, from time to time, as might suit her wants and convenience. She could not sue without first making a demand. Why any principle should apply here, different from that which governs in ordinary cases of bank deposits, is not easily discernible. We think the question is controlled by the authorities above cited.

Appellants complain that evidence was improperly admitted as to the qualifications of appellee as a music teacher, the value of her services as such, and generally the value of the services of competent music teachers. If there was any force in the objection it disappears when we consider the fact that the amount allowed by the jury was the least sum that could have been given under the clearly competent evidence in the case, no contradictory evidence of value having been offered.

The judgment is affirmed.

*Judgment affirmed.*