CASE 62.—ACTION BY MRS. SUSAN McGREW'S EXECUTOR AGAINST T. J. CONGLETON AND ANOTHER.—June 18, 1907.

## McGrew's Exor. v. Congleton, &c.

Appeal from Franklin Circuit Court.

Judgment for defendants and plaintiff appeals—Affirmed.

1. Payment—Evidence—Sufficiency.—In an action by an executor on notes, where there was a plea of set-off for services of defendants rendered decedent, evidence examined, and held insufficient to show payment of the claim for services.

2. Limitation of Actions—Claim of Agent for Services.—Where persons had acted for many years as agents for decedent in the management of her property, and no settlement or adjustment had been made or demanded, but decedent had unqualifiedly recognized her liability for the services and given assurance that they would be paid for, the statute of limitations did not begin to run against the claim until decedent's death, when the agency expired.

3. Executors—Actions By—Admissibility of Evidence.—In an action by an executor on notes, where there was a plea of set-off for services of defendants rendered as decedent's agents, evidence that defendants had borrowed money of decedent at 3 per cent. when banks were asking 6 per cent., was not admissible to show payment by decedent of defendant's claim, where there was no proof of an agreement to thus pay them for their services.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Mrs. Susan McGrew died in the city of Frankfort, December 3, 1902, leaving a large estate, consisting of cash in bank, bank stocks, notes, and real estate. She also left a will, which was duly admitted to probate by the Franklin county court, and the appellant, A. B. Hammond, who was therein appointed executor, gave bond and duly qualified as such in the same court and at once proceeded to administer the estate according to the wishes of the testatrix as expressed in the .will. Among the many notes received by the executor belonging to the estate were seven aggregating about $17,000, which had been executed to the testatrix shortly before her death by appellees. All these notes were promptly paid by appellees to the executor, except two—one for the sum of $4,142.38, of date July 2, 1902, and due in 10 months, the other for $2,945.53, dated September 6, 1902, and due 8 months after date. Both notes bore interest from date at the rate of 3 per cent. per annum. Payment of the two notes in question was refused by appellees upon the ground that the estate of the testatrix was indebted to them in the sum of $7,500 for services rendered her as agents in the general management of her property and business affairs for 12½ years immediately preceding her death, at the rate of $600 per year. Appellees presented to the executor their claim verified and proved as required by the statute and demanded of him its payment, or that it be credited upon the two notes referred.to. Instead of complying with this demand on the part of appellees, the executor sued them on the two notes. The answer of appellees admitted their liability upon the notes,

but alleged that their claim of $7,500 against the estate of Mrs. McGrew should be credited thereon. It likewise set forth the nature of appellees' claim, made it a set-off and prayed judgment against the executor for the amount thereof. Appellant replied, denying any indebtedness of the McGrew estate to appellees, pleaded payment of the claim constituting the set-off, and also the statute of limitation, to so much thereof as was not included in the five years next before Mrs. McGrew's death. Appellees by rejoinder controverted the affirmative matter of the reply, and by an amended answer alleged a promise by Mrs. McGrew, made within five years of her death, to pay this claim. On the trial appellant recovered a verdict and judgment against appellees for $533.67, which sum represents the balance due upon the notes sued on, less the amount of the set-off claimed by appellees and allowed by the jury. Appellant, being dissatisfied with the judgment and refusal of the lower court to grant him a new trial, has appealed.

It was clearly established by the evidence that upon the death of her husband in 1890 the testatrix found herself in possession of an estate in money and real property of the value of $35,000, which, by reason of her age and want of business experience, she was unable to manage. She was sensible enough to realize this, and hence placed it all, except the collection of a few rents now and then, under the management of appellees, who managed it from the time it was entrusted to them with such skill and fidelity that, when she died, the estate had increased in value to $65,000 or $70,000. The proof was conclusive that appellees during this time had full charge of her business. She would not make a loan or otherwise invest her money without consulting them and having them attend to

it. She advised with them about all her business affairs, and took their advice about everything. Whether she wished to make a loan, buy bank stock, improve or sell real estate, appellees were consulted, and their services required to attend to it all. The numerous witnesses by whom this proof was made were representative and influential citizens of Frankfort whose opportunities for knowing of the relations between appellees and the testatrix were excellent. Many of them borrowed money of the testatrix, applied to her for loans, or had other business dealings with her, all through appellees. The declarations of the testatrix from the time of her husband's death until her own, manifested her dependence upon and confidence in appellees. She made repeated statements to the effect that they were her agents, and, while it is true that she was not heard to say what she agreed or expected to pay them for their services, she did state more than once that she intended to pay them liberally. Two witnesses testified to her making such a statement a short time before her death, and in the presence of one of these she made such statement to one of the appellees, who was at the time compelled by her to temporarily neglect important business of his own, to attend to a matter for her. In brief, the conclusion is inevitable from the evidence that appellees were the agents of the testatrix in the control and management of her property and business; that they were employed by her to act in that capacity with the assurance from her and the expectation on their part that they were to be reasonably and even liberally compensated for their services. It is equally clear from the testimony that $600 per year during the time appellees acted as agents for the testatrix, which is the compensation they

claim and were allowed by the jury, is altogether reasonable and as little as they could have been expected to charge. The plea of payment is not sustained by the evidence. The only evidence of payment offered by appellant was furnished in the form of certain "receipts in full," but these receipts, according to the testimony of appellant (the executor), were written by himself when he was appellees' bookkeeper, to evidence the payment of three or four small bills of $3 or $4 each, for lumber sold Mrs. McGrew by appellees, and he admits that they had no connection whatever with the agency of appellees for Mrs. McGrew, or their services in that behalf.

Appellant attempted to plead by way of amendment that the words "without set-off," in the printed form of notes executed by appellees to the testatrix, including the two sued on, constituted an estoppel against appellees' right to the compensation claimed. It, however, appears that the amendment containing the attempted plea of estoppel was never filed, and that the court did not act on the motion to file it. It is true the court upon the affidavit of counsel for appellant did, after the trial, enter a nunc pro tunc order rejecting the amendment; but, even if this order were promptly entered, which we think it unnecessary to decide, there was no order making the proposed amendment a part of the record, or identification of it by a bill of exceptions. Consequently the question of whether its rejection by the lower court was error cannot be considered on appeal. So, in view of the condition of the record, it will not be necessary or proper for this court to pass upon the question of estoppel argued by counsel.

But the principal defense was that of limitation. The case here presented is, we think, one of agency.

The employment of appellees by the testatrix was continuous, extending through 12½ years. The services for which they claimed compensation were performed during that time as demanded. The terms of the employment fixed no time of payment for appellees' services. There was probably no time during the period of the agency that appellees did not have in their hands as much money belonging to the testatrix as would have compensated them; for, according to the evidence, whenever they collected money for her, and there was no bank stock to buy, or it could not readily be loaned, to accommodate her they would give their note for it at 3 per cent. until it could otherwise be satisfactorily invested. All the while, therefore, there were mutual and subsisting demands between the parties; each was owing the other, and in such a state of case the statute does not apply until there has been a settlement made or demanded by one of the parties. No settlement or adjustment was ever made between Mrs. McGrew and appellees or demanded by either party. The relations between them remained cordial. They were mutually trustful, and appellees' agency was terminated only by the 'death of the principal. It is inferable from the testimony that appellees expected to be paid for what they did for Mrs. McGrew, and equally so that she expected to pay them. Indeed, that such was her intention is shown by the statements before mentioned made by her within five years of the filing of appellees' answer and set-off in which she unqualifiedly recognized her liability to appellees for services rendered and gave assurance that they would be paid for by her. It is apparent, therefore, that the statute of limitation did not begin to run while Mrs. McGrew lived.

In 19 Am.& Eng.Ency.of Law (2d Ed.) 187, we find this correct statement of the law: "As long as the relation of principal and agent continues, there is a privity between the parties, and there is nothing to set the statute in operation as to claims and accounts between them. The position of the agent is that of trustee, and claims against him are governed by a rule similar to that controlling trustees. The assertion by the agent of an adverse right, or his failure to discharge a duty to his principal arising out of his agency, does not set the statute in motion, until called to the attention of the principal, or until he knows or with reasonable diligence might have known thereof. These rules apply, however, only to cases where the situation of the parties is such as to create a relation of trust and confidence and not to every instance of ordinary agency." The same principle is announced in McHarry v. Irvin, 85 Ky. 322, 3 S. W. 374, 4 S. W. 800, in the following language: "It seems to be well settled that, the confidential relation of principal and agent being thus established and continuing, the statute of limitation has no application; the reason being as aptly stated that, while the relation continues, there is a privity between the parties, and there is nothing to set the statute of limitation in operation." Waldron v. Alexander, 35 Ill. App. 319; Grave v. Pemberton, 3 Ind. App. 71, 29 N. E. 177.

It is insisted for appellant that the lower court erred in excluding the testimony offered by him to show that at the time appellees executed to Mrs. McGrew the notes sued on, money was being loaned by the banks of Frankfort and individuals at 6 per cent. The testimony of Annie O'Donnell as to appellees' use of the money was that, if Mrs. McGrew had not any money on hand, appellees furnished it for cur-

rent use; and when she had on hand more money than she had loaned out (meaning doubtless more than could be loaned) she would make appellees take it. This, and the fact that what they borrowed of her was for a short time, would seem to account for their paying her only 3 per cent. for its use. No basis was furnished by the pleadings for the admission of the testimony in question. In his reply, appellant made the averment that, if appellees rendered for the testatrix any service, it was paid for by her in allowing them the use of her money at 3 per cent. This averment is not good as a plea of payment; and, besides, there was no testimony which conduced to prove any agreement or understanding that appellees should be paid that way. The fact that banks or individuals were then getting a greater rate of interest, if proved, would not have shown that appellees had agreed to manage the business and property of Mrs. McGrew for the use at 3 per cent. of such of her money as. they might borrow. At most, it would only show that for some reason she was letting them have money at a less rate than she charged others, but, in the absence of proof showing that it was in pursuance of an agreement to thus pay them for their services, the reason would remain unexplained. We are of opinion that the testimony was properly excluded.

Our examination of the instructions convinces us that they fairly and correctly gave the jury the law applicable to the facts of the case, and, on the whole case, no reason is perceived for disturbing the verdict.

Wherefore the judgment is affirmed.