334

**BOWERS et al. v. BOWERS et al.**

No. 4646.

Court of Civil Appeals of Texas. Amarillo.

Oct. 26, 1936.

Rehearing Denied Dec. 14, 1936.

Works & Bassett, of Amarillo, for appellants.

John F. Sturgeon, of Pampa, and Underwood, Johnson, Dooley & Huff, of Amarillo, for appellees.

JACKSON, Justice.

On August 2, 1934, the appellant J. Tom Bowers, individually, and by next friend, T. M. Cunningham, instituted this suit in the district court of Gray county against the appellees to recover the sum of $200,-000 which he claimed to be the reasonable value of the services he rendered to Joe Bowers and his wife, Lizzie Bowers, by the publicity he gave to the oil and gas prospects on their land, a ranch comprising about 3,000 acres situated in the Gray county oil field, and his assistance in securing the development of the land, the production of the oil thereon, and the sale of royalty interests therein.

The appellant alleged that he, about June, 1929, became of unsound mind.

Lizzie Bowers died in September, 1930, and Joe Bowers died in September, 1931. The ranch was their community property, and Joe Bowers was the brother of appellant. Aubra Bowers, John T. Bowers, and "Little Joe" Bowers (as he was sometimes called) are the sons and only heirs of Joe Bowers and Lizzie Bowers, deceased. The sons, together with numerous oil and pipeline companies, are defendants, but inasmuch as it is necessary for appellant to establish a cause of action against the sons before he can recover against any of the other defendants, our discussion will be confined to the suit against the sons, whom we shall designate as appellees.

Lizzie Bowers died testate. Her will was probated, her husband appointed independent executor thereof, and the appellees acquired her estate as legatees.

The father died intestate before closing the administration of the estate of his deceased wife, and Aubra Bowers was granted letters of administration de bonis non on the estate of Lizzie Bowers, his deceased mother, and letters of administration on the estate of Joe Bowers, his deceased father.

The appellees urged a general demurrer, numerous special exceptions, general denial, and pleaded the statutes of two and four years' limitation as a defense to appellant's suit.

At the conclusion of the testimony, the court peremptorily instructed the jury to find for all the defendants. The jury complied, and judgment was entered that appellant take nothing by reason of his suit, from which action of the court this appeal is prosecuted.

■ It has been frequently held to be reversible error for the court to direct a verdict,

"If, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." Dendy v. Cockerham et ux. (Tex.Civ.App.) 82 S.W.(2d) 756, 758.

To the same effect are the holdings in Texas Employers' Ins. Ass'n v. Ritchie (Tex.Civ.App.) 75 S.W.(2d) 942; Jackson v. Langford (Tex.Civ.App.) 60 S.W.(2d) 265; Gross v. Shell Pipe Line Corporation (Tex.Civ.App.) 48 S.W.(2d) 377, and authorities cited.

"Circumstances and facts, in many instances, speak louder than mere words, and * * * inferences can be drawn from circumstances and facts, and juries are permitted to take these into consideration in rendering verdicts." Donnell v. Dennis. (Tex.Civ.App.) 87 S.W.(2d) 822, 823.

■ One of the special provinces of the jury is to reconcile, if they can, conflicts and contradictions between the testimony of witnesses, and "adjust inconsistencies in the evidence of a witness in case they develop." Rose v. O'Keefe (Tex.Com.App.) 39 S.W.(2d) 877, 879.

■ Discarding the adverse testimony and indulging in the legitimate conclusions to be inferred from the evidence considered in its most favorable light to plaintiff, the record tends to show that appellant

visited his brother Joe Bowers in 1923 or 1924, at his ranch on which the oil and gas were later discovered. During that visit, or soon after, Joe Bowers told their brother Jim that Tom, the appellant, claimed to be a driller and a geologist; that he had had a conversation with Tom in regard to oil on the ranch, in which conversation the deceased told the appellant that if he gave publicity to the oil prospects on his ranch and they got oil that when he (deceased) got on his feet he would give the appellant a bunch of money so he could live from there on out. Joe Bowers was a farmer and ranchman, and knew little or nothing of the oil and gas business. The appellant had been for years, in fact, practically all of his life, and at the time of the trial he claimed to be 65 years old, engaged in working sometimes as an ordinary laborer, but frequently as a driller, for oil companies in many of the oil fields in numerous states. He had acquired considerable practical geological information and had an extensive acquaintance with numerous oil operators, among whom were the officers and employees of many of the producing companies. He examined his brother's ranch, designated on maps the location thereof, and inclosed a map with a letter stating his conclusions as to the oil possibilities to each of the various oil companies, including the Standard Oil Company, Gulf Production Company, J. M. Guffey Pipeline Company, Sinclair Refining Company, and numerous other companies and oil men. He received replies to such correspondence from some of these companies. In addition to this, he conversed with many oil people to whom he did not write, telling them his judgment of the potential possibilities of oil on his brother's ranch. He persisted in these efforts over a period of years, and one of the companies to which he had furnished a map and information drilled the first well on the ranch that produced oil. He advised one of the appellees herein, a son of Joe Bowers, after some gas wells had been discovered, where, in his opinion, an oil well should be drilled and it was on this location that the first oil was obtained. He advised with his brother from time to time relative to the sale of royalties and the value thereof after oil had been discovered.

In February, 1928, Joe Bowers and his wife, Lizzie Bowers, conveyed one-half of their royalty interest in the ranch to purchasers for the sum of $1,000,000 to be paid as follows: $250,000 in cash, a prom

issory note for $50,000 due in 12 months, and the balance, $700,000, to be paid out of one-fourth of the oil runs, if and a's produced. This royalty sale was made through agents to whom a commission of $30,000 was paid in cash and a balance, $70,000, to be paid out of oil runs produced from the land. The commission men sold their $70,000 interest in the oil for $20,000 cash. The, negotiations for this sale lasted for some time, and there was much discussion of values and prices and terms, and Joe Bowers, the deceased, told one of the commission men that his brother Tom Bowers, the appellant, was a geologist and had gathered and furnished him more or less information relative to the oil prospects on the ranch.

Near the time of this sale, Joe Bowers said to Ben F. Dumas that he had needed money very badly when oil was discovered on his property; that appellant was an oil man and had helped and advised him, and he was going to pay him well for such services. Thereafter this witness was present at a conversation relative to Joe Bowers having purchased another ranch, which, according to the record, was on January 25, 1931, and appellant told his brother Joe that he had paid too much for this other ranch, and Joe replied. "You needn't worry. I am going to pay you soon." Appellant walked away and Joe said to the witness that he guessed Tom was getting uneasy about his money, but that he was going to pay him well. On another occasion this witness had heard Joe Bowers say he was going to give appellant $200,000 to build a refinery and drill wells because the appellant had helped and advised him. The appellant believed Joe was going to pay him for his services and because he knew nothing about building a refinery or a gas plant, he got a job as a common laborer with a gas plant in order to learn to build such a plant or refinery, and worked at such plant until in June, 1929, when he was injured.

The appraisement of the Lizzie Bowers estate filed October 7, 1930, discloses that of the $700,000 consideration to be paid for the royalties out of oil as produced, more than $200,000 thereof still remained unpaid. The final report of Aubra Bowers, as administrator of both estates, discloses that of the original $700,000 to be paid out of oil, there was an unpaid balance valued at $35,000. This final report was made and approved December 26, 1933, and the administrator discharged.

While Joe Bowers was in the hospital because of illness from which he never recovered, the appellees refused to permit the appellant to visit his brother, and resorted to personal violence to prevent him from so doing.

There is testimony in the record, unnecessary to recite, which we think sufficient to show that the relation of the deceased and appellant was not such as to indicate that the services rendered were considered gratuitous by either of them.

Under the evidence, whether or not appellant had been of unsound mind since June, 1929, was a fact issue.

The appellees undertake to sustain the directed verdict against appellant because of the alleged error of the trial court in overruling their general demurrer and special exceptions attacking the insufficiency of appellant's petition.

"As the trial court overruled appellees' demurrers to appellants' petition, we cannot affirm the judgment in their favor, on the ground that the petition did not state a cause of action. They should have been given the right to amend, if the petition was defective." Gerhart v. Harris County (Tex.Civ.App.) 244 S.W. 1103, 1106, affirmed by the Supreme Court, 115 Tex. 449, 283 S.W. 139. See, also, Shell Petroleum Corporation v. Burnett (Tex.Civ.App.) 91 S.W.(2d) 1091.

No agreed amount of compensation for appellant's services, and no agreed time for payment for such services, are shown by the testimony. The testimony of the deceased brother as to any agreement, conversation, or understanding relative to the services rendered was foreclosed by his death, and the testimony of appellant as to such matters is inhibited by article 3716,. Revised Civil Statutes. There is admissible testimony in the record, however,. which tends to show that any sum to be paid for the services was dependent on the publicity given by appellant to the probable existence of oil and gas on the ranch, the discovery and production thereof, and. that the payment was to be made out of the proceeds of such production after the deceased had "gotten on his feet," from which the jury could have found that reasonable compensation was intended to be paid out of the production of oil when the deceased had discharged the debts. which he owed at the time of the discovery and production of oil. The deceased acknowledged the services in numerous.

statements, that he had received assistance and advice from appellant, that deceased was indebted to appellant therefor, and was going to pay him well, and also by his promise to appellant that deceased would "pay him soon."

"A condition precedent has been defined to be such a condition as must happen or be performed before a right can accrue to enforce an obligation depending upon the happening or performance thereof against another in favor of one claiming such right—and also as a fact which must exist before a duty of immediate performance of a promise arises." 10 Tex.Jur. p. 343, par. 197.

"Where some condition precedent to the right of action exists, whether it be a demand and refusal or some other act or contingency, the cause of action does not accrue, nor the statute begin to run, until that condition is performed. Thus if a debt is not absolutely or presently due, but either the obligations to pay or the time of payment is contingent on the performance of some act, the happening of some event or the lapse of a specified period of time, then the happening of the event is a condition precedent to the present obligation to pay and the debtor is not in default nor the creditor entitled to call for performance until the condition is fulfilled and the statute cannot begin to run until that time." 17 R.C.L. par. 21, p. 755.

█ Against a promise to pay when financially able, limitation does not begin to run until the contingency, ability to pay, arises, Ruzcoski v. Wilrodt (Tex.Civ.App.) 94 S.W. 142, nor against an obligation to pay out of money when collected or out of the proceeds of a sale when made, until the contingency, the collection of the money or the collection of the proceeds of the sale, has been made, Parsons v. Parsons (Tex.Civ.App.) 275 S.W. 200, affirmed (Tex.Com.App.) 284 S.W. 933.

Where the testimony shows that a claim was to be paid from moneys obtained from the sale of royalties, limitation would not begin to run until the proceeds of the sale of the royalties had been collected. Ewing v. Schultz (Tex.Civ.App.) 220 S.W. 625 (writ refused), and authorities cited. See, also, 28 Tex.Jur. p. 171, par. 79; Baker v. Cook (Tex.Com.App.) 15 S.W.(2d) 600; Gray v. Cheatham (Tex.Civ.App.) 52 S.W. (2d) 762; McGrew's Ex'r v. Congleton, 139 Ky. 515, 102 S.W. 1185, 31 Ky.Law

Rep. 609; Washington, B. & A. Electric R. Co. v. Moss, 130 Md. 198, 100 A. 86.

"The decedent did not compensate appellee in any way for these services. But he often acknowledged them and their value to him by telling others he intended to compensate appellee therefor by leaving his estate to appellee at his death. It is true the jury found that decedent and appellee had no express or even implied agreement whereby the former was obligated to leave his entire estate to the latter, and the evidence was such as to warrant this finding. But it is equally true that by the declarations of his intention to devise his estate to appellee in consideration of the latter's services to him, the decedent, thereby acknowledged that such services were performed, that they were of substantial value to him, and that appellee was entitled to compensation therefor. So is it true that the decedent's intention to compensate him was communicated to appellee at various times in one way or another, and that from these communications appellee was warranted in believing that decedent would compensate him in one way or another, and that he continued to perform the services in that belief. We conclude that all these facts and circumstances, when considered together, as they must be, were sufficient to take the issue to the jury." Martin v. De la Garza (Tex.Civ. App.) 38 S.W.(2d) 157, 159.

█ Appellees' contention that appellant's suit was barred by the statutes requiring the presentation of the claim to an administrator within a prescribed time is not tenable. Lizzie Bowers died and her will was probated in 1930. Joe Bowers died and administration was had on his estate in 1931, and, if the jury had found that appellant was of unsound mind after June, 1929, such disability would have relieved him from complying with such statutes. Moore et al. v. City of Waco et al., 85 Tex. 206, 20 S.W. 61.

In our opinion, the record did not authorize the court to peremptorily instruct a verdict for the defendants.

Since the appellees acquired their mother's interest in the community estate by will and were, as to such part of said estate, legatees, appellant insists that he should have been permitted, as against appellees as legatees, under certain proper instructed limitations, to testify to certain agreements and conversations he had with his deceased brother.

The law is that article 3716 has no application to a suit against a legatee as such. Garrett v. Garrett et al., 124 Tex. 330, 78 S.W.(2d) 157. In this case the appellees were sued in the capacity of legatees of their mother's interest in the community estate, and in the capacity of heirs of their father's interest in said community estate. By the will of the mother and the law of descent and distribution, the entire estate passed to the appellees jointly, share and share alike. The service for which compensation was claimed by appellant was rendered to the estate as a whole. The estate in its entirety was liable for any compensation recovered, and the cause of action as alleged and according to the evidence was not divisible but against said entire community estate. Under the record and the holding of the Supreme Court in Spencer et al. v. Schell, 107 Tex. 44, 173 S.W. 867, we think the court correctly excluded this testimony.

The judgment is reversed and the cause remanded.